## Case No. 14,315a.

### TYSON v. BELMONT.

[16 Betts, D. C. MS. 12.]

District Court, S. D. New York.   Feb. 23, 1849.

#### AMENDMENT OF PLEADINGS.

[It is proper to allow plaintiffs, on motion, to amend by changing the form of action from debt to covenant, and by striking out the name of one of the plaintiffs.]

[See Cases Nos. 14,316 and 1,281.]

## Case No. 14,316.

### TYSON v. BELMONT.

[28 Hunt, Mer. Mag. 583.]

District Court, S. D. New York.   Feb. 12, 1852.[1]

CHARTER PARTY—INTERPRETATION—EXECUTION BY PART OWNER—AUTHORITY OF MASTER—SUBMISSION TO ARBITRATION—CUSTOM AND USAGE.

[1. Where a merchant, who is part owner of a vessel, executes a charter party in his own name, describing himself as part owner, it is to be presumed that, although the captain is also a part owner, he is bound by the provisions of the charter party, and, consequently, that on the voyage under the charter party he has no power to exercise the rights of a part owner.]

[2. Where a charter party was executed at New York to take a load of lumber from the port of Apalachicola to a foreign country, it is to be presumed that the parties contracted with reference to the character of that port, and the incidents and difficulties attendant upon entering the harbor and loading the vessel at that place.]

[3. In an action at law for breach of a charter party, whereby the vessel was to receive a load of lumber at Apalachicola, it being alleged by plaintiff that a full cargo was not furnished, and contended by defendant that before the loading was finished the ship went outside the harbor, where it was difficult to supply her, held, that it was a question for the jury whether the master had acted judiciously and properly in determining that it would be unsafe to cross the bar if the ship were more deeply laden; and that, if his action was proper, it was the charterer's duty to deliver the remainder of the cargo outside.]

[4. Under a charter party providing that cargo is to be furnished as "required" by the master, it is sufficient, on the ship's part, if the master gives notice that he is in want of more cargo.]

[5. A master, though a part owner, has no power, when acting under a charter party of the vessel, executed by the other part owner in his own name, as part owner, to submit to arbitration a controversy as to the amount of freight due.]

[6. A usage cannot be considered for the purpose of determining the construction of a charter party unless there is an ambiguity in the terms of the instrument itself.]

[This was an action of covenant brought by William Tyson against August Belmont upon a charter party.]

The plaintiff in this case, being part owner of the American ship Probus, agreed by charter party with defendant to freight the ship for a voyage from the port of New York to

[1] [Affirmed in Case No. 1,281.]

Apalachicola, the vessel to be in good order, well manned and provisioned, thence to proceed to Toulon or Brest, the whole of the freighting part of the ship to be according to the custom of merchants, at defendant's sole disposal for a cargo of lumber; the cargo to be delivered at Apalachicola. alongside, as fast as required by the captain, who was to use all precaution for its safety, and be responsible for losses by neglect. The defendant agreed to furnish complete cargo, and to pay freight, 90 francs per load of 50 feet string measure, and 5 per cent. primage, lay days to be allowed; and in case of detention by defendant, to pay 100 Spanish milled dollars a day. Penalty, $10,000. The ship left this port on 17th February, 1848, and arrived at Apalachicola 15th March, 1848. That defendant failed in leaving the cargo as agreed upon, and, after shipping part, by an indorsement on the charter party, changed the destination of the vessel to Liverpool, and the freight to 80 shillings sterling, instead of 90 francs, with the same primage. The indorsement was dated 19th April, 1848. The ship left Apalachicola on 15th June, 1848, and arrived at Liverpool on 8th August. 1848. There the cargo was delivered according to the bill of lading.

The breaches assigned were that the cargo was not ready as agreed upon; that it was not a full one; that it was not ready or delivered alongside as agreed upon; that. defendant caused a delay of 18 days; that he. did not pay the freight. amounting to £2,657 5s. 2d. sterling. The defence was non est factum, with general traverse, and special notice of matter in bar. That the captain was part owner, and interested in the covenants. That much less than the cargo acknowledged by the bills of lading was delivered to the agents of the consignees. That the captain claimed, as part owner, freight and primage, which was denied by defendant's agent to be chargeable on more than the cargo actually delivered. That the matter was left to arbitration. That on 7th December, 1848, a submission to arbitration was entered into. That arbitrators were appointed. That an award was made, deciding freight was to be paid at the rate of delivery measure at Liverpool, and that, thereunder, the amount of £2,657 5s. 2d. was paid to the captain, leaving to plaintiff and the captain only such claim as they may have for dead freight and demurrage, of which defendant avers there was none. That the alleged delay was caused by the captain, who took the vessel round from the East Pass, where she was anchored, and had been supplied with most of her cargo, to the West Pass, where it was almost impossible to take the lumber to her, and that the agent of the defendant had made a stipulation with the captain that, if the ship was taken round. no demurrage should be charged. It was also contended that if the ship had remained at her original anchorage, the cargo would have been all de-

livered by the agent of the defendant. The delay was also attributed by defendant to the weather. That the sole use of the ship was not given to defendant, and that there was damage arising from improper stowage. Defendant claimed damages $18,000, as recoupement of any damages to be recovered in this action. The plaintiff denied the plea in bar, and traversed it generally.

[For proceedings on motion to amend the action by changing its form from debt to covenant, see Case No. 14,315a.]

D. Lord and J. Laroque, for plaintiff.

F. B. Cutting and E. H. Owen, for defendant.

BETTS, District Judge (charging jury). The plaintiff, as owner, wishes full cargo, and chartered full possession. There was no estimation as to the amount of cargo, yet this was important, as the penalty was large. It appears the captain was part owner, yet plaintiff executed the charter in his own name, still representing himself therein as part owner. A question arises what operation the charter had on the captain's rights. A question also arises whether the captain could exercise rights of part owner on that voyage. It is to be implied that plaintiff was empowered to act as whole owner. It is to be presumed that defendant informed himself that plaintiff had a right to exercise full power as owner. It is implied that plaintiff had such right. It is usual for merchants to take in the master as part owner to stimulate his exertions. But though he stands as part owner at the custom-house, yet the practice is to let the merchant owner take the direction and planning of the voyage. Upon general principles of commercial law, it might well be that the captain, though part owner, had no right to interfere with the letting of the ship.

Another thing to be presumed is that both parties so contracting knew the character of the port of Apalachicola and the incidents of entering the harbor. and difficulties are to be taken as understood as if they were mentioned in the contract. There is no objection of want of sufficient diligence in the captain on arriving at Apalachicola. The contract stipulated the cargo was to be furnished as required by the master. Notice from him, therefore, was necessary. The cargo was to be supplied alongside as the master required. The only exception was the weather. The captain was to take the goods alongside. and not be liable for loss, except through neglect. There was a stipulation for lay days. The cargo was to be sent as the captain required and state of weather allowed. The word "require" is not of definite meaning. It has two significations.—one, "demand" that captain should make; another, is "necessity" or "need," or as fast as he needed. If one of these be the signification. the captain was to look to it; if the other, the shipper

was to do so. The action is brought alleging that full cargo was not supplied. The ship was obliged to sail though not filled up. Compensation is claimed for fifty loads at 80 shillings sterling per load. The next default is detention eighteen days, the ship being ready to receive cargo. Another claim is that when the cargo was delivered the ship only received three-fourths of the freight; over $3,000 not paid.

The defenses are as to the sufficiency of the pleadings, and that the cause is to be tried on issues framed in writing. The plaintiff insists the pleas do not meet various points, and that defendant is not entitled to give evidence on various matters. In my opinion the pleadings are so framed as to admit every defense. You are to look at the charter and evidence to see what the rights of the parties are. The destination was changed; all else remains the same. The charter is to be applied to all the changes of destination, of the port originally designated. This will obviate one of the grounds set up by the defendant in respect to the claim of freight.

The first question is whether there was any default in supplying a full cargo. Two grounds are taken by defendant as to not supplying full cargo: First, that it was fully loaded; that it had a competent lading: second, the vessel was out at sea, where it was very inconvenient, if not dangerous, to transport cargo; that a portion was sent, but defendant was not compellable to send more than was convenient. As to the first,—the obligation to supply all she could stow away. Upon the contract the obligation is express. The defendant was to supply full cargo, and subjects the owner to loss of entire freight if he had not taken a full cargo. No stipulation was more important to the owner of the vessel than the cargo. The stipulation was to carry timber of unusual dimensions for shipping. The vessel could not receive the logs and pass throughout the full width of the vessel. The stipulation, therefore, was that the vessel should be supplied with full proportion. The plaintiff is entitled to exact a full performance, unless he has put it out of his power, or was relieved from performance.

The second question is whether the captain was justified in going outside of the bar. It must be understood that the contract was entered into between men who knew the situation of the port, and the depth of water she would carry over the bar. It must be presumed they knew how far down they could load the vessel. Suppose the captain was influenced by undue timidity, and had gone away before loading to the depth she could carry over the bar, then the act was wrongful. But if he found she was loaded as deep as prudent where she lay, then defendant is answerable for removal, and was not explicit as to how far she should be loaded, and the usage to supply an inadequately filled ship outside. If usage be applied to this contract, she could go outside and claim cargo there; she could command there enough to fill her up. She must take up the best position that circumstances permitted. The question arises, whether she did take such position. You are to determine whether what was done was judicious and proper. It was his duty to select the most proper place. If he made a proper selection, then he was entitled at that place to all the advantages at Apalachicola. These matters you will dispose of according to evidence.

The judge then charged the jury on the third question of the demurrage charged for eighteen days—and said, after reviewing the testimony, they had a right to imply that more timber was required, adopting the defendant's views; that the captain should demand timber, and that plaintiff should show the demand. The jury are to determine and be satisfied whether notice has been given. And the judge said that the defendant said that during that period the men were engaged on ship's duty. The defendant must show more than mere statement on this head. The obligation to give notice was fully satisfied by showing she was in want of timber, and defendant was bound to furnish it, unless on intimation or notice from the captain that he did not want it.

The last question relates to freight. This involves questions of law, novel and difficult. The matters of fact can be arranged so as to leave the questions of law to be found upon hereafter, and need not therefore involve a new trial. The cargo was taken to Liverpool. When the ship was ready to sail, the captain, at request of defendant's agent, executed a bill of lading, which was indorsed to the Rothschilds, and then by them to Jaques, Myers & Co., who presented it and claimed delivery. There are some questions as to the rights of the latter persons, whether they were owners of the cargo or agents. If Belmont sold to Rothschilds, he is not affected by any arrangement. It was the duty of the master to collect the freight for the owner. Difficulties arose and it was agreed to arbitrate. The arbitrators decided freight should be according to Liverpool measure, and the freight so settled was paid, and defendant claims the award as conclusive. These are all nice questions. I will lay before you my first impressions. What authority had these persons to arbitrate? On what authority did Jaques, Myers & Co. interfere? Whether Rothschilds were owners or agents of Belmont does not appear. Ordinarily he received the cargo to hold as stockholder. He must show that Myers had all the power the original owner possessed. He had undertaken to pay freight according to the charter-party, and after that could make no other condition. After delivery of the cargo, if delivered without exacting freight, the captain had lost his lien and had no resource except

to the shipper. I think the submission on Myer's part would be nugatory, and, if entered into in perfect good faith, not valid. Is the captain bound by it or the plaintiffs? In respect to plaintiff, he is to be considered all along as entire owner of the ship. Whatever rights the captain had are to be enforced against him, and not against the ship. The ship, freight, and cargo, are all under the contract of plaintiff, and the captain had no right to arbitrate away his rights. If the captain made the submission, it would not bind plaintiff. Did it bind the captain? If nothing were shown but the fact of part ownership, he was entitled to half the freight, and could arrange as to it, but on the question here presented the inference is the other way, and that the captain had placed in plaintiff's hands all his rights. So that in respect to his own rights he would have no power to arbitrate.

But, again, Belmont is not bound, and the rule applies, that if not binding on one it is not binding on others.

The judge declined to state his views on the point urged by plaintiff, that he had nothing to arbitrate, because the submission says the freight, as per charter party, was submitted, and the parties understanding when originally bound she would be entitled to freight without deduction, and the change of destination providing that all other stipulations should remain the same, there was then nothing as to freight to submit. But defendant urges it is a mercantile contract, and to be understood according to its usage at the place where it was to be executed. This is true to a certain extent, if there were ambiguity on the face of the contract, but, if none, then usage cannot be brought in. If there be no doubt as to what parties mean, there is nothing for usage to act on. If doubtful on the contract, whether on sending to Liverpool freight was to be paid according to bill of lading or according to usage where delivered, then usage may be admitted; but not to be admitted to any stipulations of the charter. There are questions raised as to what the custom is. Defendant claims that by the usage all timber delivered pays freight according to quantity of merchantable timber delivered. Plaintiff claims that usage is only between merchant and merchant on sale. You will therefore have to inquire what the custom is; not to determine the right of the parties, because the law does that, but to protect rights of parties. On review, you will state what you find the custom is.

It is undoubtedly against reason, against the propriety of things, and also against the plain meaning of the parties, and unjust to the ship owner, that he should not be entitled to compensation for carrying a portion of cargo. The master has nothing to do with inquiring from owner of the cargo what use he intends to put it to. It would subject him to damages from the shipper if he refused to take just what was presented, and therefore, in my notion of things, the law intends that he is entitled to payment for what he carries, and therefore there is no room for question, unless the law implies that he contracted with reference to usage. If the captain sued defendant for not putting on board merchantable timber, Belmont might answer: "I had a right to send what I chose. If by the usage you could not claim pay for it, that is the end of it." The court can entertain no doubt upon the contract that the owner is entitled to payment for all he carried. There was little difficulty between the captain and defendant's agent as to difference and measurement. They decided the difference, and settled in the bill of lading the quantity of timber.

Another question was raised, as to its being a fraudulent submission and deceitful, and the award of the arbitrators a fraudulent one. If this be so, it is all void. So with regard to the arbitrators; if the award be corrupt, it is void. You are not to imply or impute fraud. You are to understand that the parties acted in good faith. You are not to impute that they designed to practice any trick, or that the arbitrators intended to practice fraud. You are to be satisfied that the evidence fully supports the charge.

Mr. Lord excepted to the charge.

The jury retired, and found for plaintiff damages $7,484.24.

[Affirmed on appeal to the circuit court. Case No. 1,281.]

TYSON (BELMONT v.). See Case No. 1,281.